IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES DOUGLAS THOMAS RIDER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-997 (MN) |
| | ) |
| OFFICER REA GREEN, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION

James D. T. Rider, Sussex Correctional Institution, Georgetown, Delaware. Pro Se Plaintiff.

Carla Anne Kingery Jarosz, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware. Counsel for Defendants Rea Green, Keshaw Travies, and Wayde Campbell.

Dana Spring Monzo and Kelly Elizabeth Rowe, WHITE & WILLIAMS LLP, Wilmington, Delaware. Counsel for Defendant Connections Community Support Program.

January 28, 2020
Wilmington, Delaware

*[signature: Maryellen Noreika]*

**NOREIKA, U.S. District Judge**:

Plaintiff James D. T. Rider ("Plaintiff"), who appears *pro se* and was granted permission to proceed *in forma pauperis*, is an inmate at the Sussex Correctional Institution ("SCI") in Georgetown, Delaware. Plaintiff was incarcerated at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, when he commenced this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 3). Before the Court is Defendant Connections Community Support Program's ("Connections") unopposed motion to dismiss. (D.I. 45).

**I.     BACKGROUND**

The Complaint alleges delay or denial of medical care in violation of Plaintiff's constitutional rights. (D.I. 3). Plaintiff alleges that on November 16, 2014, he suffered excessive force at the hands of correctional officers Defendants Rea Green ("Green"), Keshaw Travies ("Travies"), and Wayde Campbell ("Campbell"). (*Id*. at 5). The next day Plaintiff was seen by medical personnel and prescribed Motrin. (*Id* at 5, 14). Plaintiff was referred to a nurse practitioner but did not see one until January 18, 2015, almost three months after he was injured. (*Id*. at 14). The nurse practitioner recommended an MRI consult for Plaintiff but, as of February 24, 2015, it had not taken place. (*Id*.). The medical grievance decision attached to the Complaint indicates that Plaintiff was seen by medical personnel on several occasions between December 19, 2014 and March 13, 2015 and, in March, physical therapy was ordered and Plaintiff was taught range of motion exercises. (*Id*. at 15). On an unspecific date the MRI was performed with the finding, "Your test result is not within normal limits. Further studies are required and you will be notified when a follow up apt is scheduled for you." (*Id*. at 5). Plaintiff alleges

---

[1]     When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

1

there was no follow-up and that he is "still in very bad pain." (*Id.*). Plaintiff seeks compensatory damages.

## II.   SHOW CAUSE

Plaintiff requested counsel in October 2016, and his requests were denied without prejudice in March 2017. (*See* D.I. 5, 6, 13). He again sought counsel in December 2018, and the request was denied in March 2019. (*See* D.I. 38, 43). On May 17, 2019, Connections filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and its certificate of service alerted the Court that Plaintiff was incarcerated at the Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware. (D.I. 47). Mailings sent to Plaintiff at HRYCI were returned "undeliverable" and, upon request by the Court, the Delaware Department of Correction provided an address for Plaintiff at SCI. (D.I. 50).

On December 12, 2019, the Court ordered Plaintiff to show cause why the case should not be dismissed for his failure to prosecute, noting that he had not filed an opposition to the motion to dismiss, had not updated his address with the Court, and that the last action he had taken occurred in December 2018. (D.I. 51). Plaintiff responded that "things have been hard for him," he needs an attorney, and he had not been in touch with the Court because he was waiting for the Court to provide him counsel. (D.I. 52). Plaintiff states that he still dealing with his physical condition. The Court considers Plaintiff's response and finds he has shown cause why the Complaint should not be dismissed for failure to prosecute.

## III.   LEGAL STANDARDS

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, his pleading

is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

3

## IV.     DISCUSSION

### A.     Medical Needs

Connections seeks dismissal on the grounds that the Complaint fails to state a claim for deliberate indifference under the Eighth Amendment. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05; *Pearson v. Prison Health Serv.*, 850 F.3d 526, 537 (3d Cir. 2017) (a delay or denial of medical treatment claim must be approached differently than an adequacy of care claim).

When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). To establish that Connections is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cty. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under

contract with the state cannot be held liable for the acts of its employees and agents under those theories). Assuming the acts of a defendant's employee have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See Natale*, 318 F.3d at 584 (citations omitted).

"'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. at 1132 (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

Connections contends that the pleading is insufficient to survive a motion to dismiss. It argues dismissal is appropriate because the "scant details" do not allege that Plaintiff requested further care or that it specifically denied or delayed care. Connections also argues that the allegations indicate Plaintiff received some treatment and Plaintiff does not point to specific medical personnel actions. In addition, Connections argues that Plaintiff fails to establish that Connections maintained a policy, practice, or custom that caused constitutional harm to Plaintiff.

As is well-established, the legal standard when ruling on Rule 12(b)(6) motions is identical to the standard used when screening a complaint pursuant to 28 U.S.C .§ 1915(e)(2)(B)(ii). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6)

standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). The Court previously reviewed Plaintiff's allegations and found that he stated what appear to be cognizable and non-frivolous § 1983 claims against Connections for delay or denial in providing him medical care for serious medical needs. Nothing has changed since that ruling. Nonetheless, the Court has revisited the allegations, liberally construed them, as it must, and finds that Plaintiff adequately raises medical needs claims under the Eighth Amendment.

In addition, there is no dispute that Connections is responsible for inmate incarcerated within the Delaware Department of Correction. It is alleged that Plaintiff has a serious medical condition and that there was a delay in providing treatment to Plaintiff, and that delay continues to date. Plaintiff is not required to recite the specific text or official policy. He must only place Connections on notice as to its alleged improper conduct and the policy in place that created such conduct.

Liberally construing the allegations, Plaintiff adequately states a claim against Connections. The Complaint pleads facts that indicate there was delay in providing Plaintiff medical care despite its necessity which is sufficient to allege a custom or court of conduct by Connections. While discovery may show that Connections acted properly, at this stage of the litigation, Plaintiff has pled sufficient facts to proceed against it. Therefore, the Court will deny the motion to dismiss claims raised pursuant to 42 U.S.C. § 1983.

> **B.  Exhaustion of Administrative Remedies**

Connections also seeks dismissal on the grounds that Plaintiff has failed to exhaust his administrative remedies. Connections notes that Plaintiff submitted a grievance regarding medical care and obtaining an MRI. Connections argues, however, that the Complaint does not

indicate that Plaintiff submitted a grievance seeking "post-MRI treatment," and, therefore, dismissal is appropriate.

Under the Prison Litigation Reform Act of 1996, a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

An inmate must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g.*, *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008). Finally, the "failure to exhaust is an affirmative defense the defendant must plead and

prove; it is not a pleading requirement for the prisoner-plaintiff." *Paladino v. Newsome*, 885 F.3d 203, 207 (3d Cir. 2018) (quoting *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013)).

The Complaint alleges there was a grievance procedure available where Plaintiff was housed, he filed a grievance, and the grievance process was completed. (D.I. 3 at 8). The face of the Complaint indicates that Plaintiff exhausted his administrative remedies. There is nothing before the Court to indicate otherwise. Connections' position is not a basis for dismissal at the pleading stage.

In light of the foregoing, the Court will deny Connections' motion to dismiss for failure to exhaust administrative remedies.

## V. <u>CONCLUSION</u>

Based upon the above discussion, the Court will deny Connections' motion to dismiss. (D.I. 45).

An appropriate order will be entered.