IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES DOUGLAS THOMAS RIDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-997 (MN) |
| | ) | |
| OFFICER REA GREEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **<u>MEMORANDUM OPINION</u>**

James Douglas Thomas Rider, Pro Se Plaintiff.

Ryan T. Costa, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware – Counsel for Defendants Officer Rea Green, Sgt. Keshaw Travies, and Officer Wayde Campbell.

Dana Spring Monzo and Kelly Elizabeth Rowe, WHITE & WILLIAMS LLP, Wilmington, Delaware – Counsel for Defendant Connections Community Support Programs, Inc.

July 27, 2021
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

Plaintiff James Douglas Thomas Rider ("Plaintiff" or "Rider"), an inmate at Sussex Correctional Institution, proceeds *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 9, 11).   Plaintiff was housed at James T. Vaughn Correctional Center when he commenced this action on October 26, 2016.   (D.I. 3).   Presently before this Court are Officer Rea Green, Lieutenant Keshaw Travies, and Officer Wayde Campbell's (collectively "the State Defendants") motions for a protective order and for summary judgment and Plaintiff's request for counsel. (D.I. 107, 112, 118).

I.      **BACKGROUND**[1]

As alleged, on November 16, 2014, Plaintiff had an altercation with Defendant Correctional Officer Rea Green ("Green") who behaved unprofessionally and would not allow Plaintiff to go to the bathroom.   (D.I. 3 at 4).   Plaintiff informed Defendant Sgt. Travies ("Travies") that Green would not allow Plaintiff to use the bathroom and Travies peppered sprayed Plaintiff although Plaintiff was not resisting or doing anything to warrant any harm.   (*Id.* at 4-5). Plaintiff was handcuffed and Green and Defendant Correctional Officer Wayde Campbell ("Campbell") tackled Plaintiff to the floor.   (*Id.* at 5).   Plaintiff's shoulder was injured.   (*Id.*). He states that the "staff bullied [him] and tried to make it look like a physically threat it is clear that the code 6 call was improper."   (*Id.*).

Plaintiff received a disciplinary report for demonstrations (strike), disorderly or threatening behavior, disrespect, failing to obey an order, and off limits.   (*Id.* at 12).   During a

---

[1]     The allegations are discussed only as to those raised against the State Defendants, the case having been stayed against Defendant Connections Community Support Programs, Inc. and its employees on June 7, 2021.   (*See* D.I. 130).

November 17, 2014 disciplinary hearing Plaintiff was found guilty and sanctioned to fifteen days in the hole.   (D.I. 3 at 13; D.I. 113-2 at 14).

The Complaint alleges that the grievance process has been completed and no relief was given.   (*Id*. at 8).   During his deposition, Plaintiff testified that he "put in his grievances" once he "got out of the hole".   (D.I. 113-2 at 14-15).   Plaintiff testified that he first put in a grievance on correctional officers Travies, Green, and Campbell, and the medical grievance "came after that".   (*Id*. at 14-15).

Plaintiff submitted a grievance, No. 297479, on December 11, 2014 complaining of problems with Green.   (D.I. 113-4 at 1).   It was received by the grievance office on December 15, 2014.   (*Id.* at 3).   The grievance provides an incident date of December 11, 2014, but it is evident when reading the grievance that Plaintiff describes the November 16, 2014 altercation when Plaintiff asked for permission to use the bathroom.   (*Id*. at 3).   The grievance was returned.   (*Id*. at 1).   Plaintiff also submitted a medical grievance, No. 297560, on December 17, 2014 regarding medical treatment for his shoulder.   (D.I. 3 at 15).   The grievance was fully exhausted on March 19, 2015.   (*Id*. at 16).   Plaintiff seeks compensatory damages. (*Id*.).

Defendants filed a motion for a protective order and a motion for summary judgment. (D.I. 107, 112).   They seek summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies against them as is required under the Prison Litigation Reform Act ("PLRA").   Plaintiff did not file a response to the motion despite being give two extensions to do so, the last extension being May 14, 2021.   (D.I. 116, 127).   On March 9, 2021, Plaintiff filed a request for counsel.   (D.I. 118).

## II.    <u>LEGAL STANDARD</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).    When determining whether a genuine issue of material fact exists, this Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.    *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).    A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party, and a factual dispute is material when it "might affect the outcome of the suit under the governing law."    *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-49 (1986).

The nonmoving party bears the burden to establish the existence of each element of his case.    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).    In doing so, the non-moving party must present specific evidence from which a reasonable fact finder could conclude in his favor. *Anderson*, 477 U.S. at 248; *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment should be granted if no reasonable trier of fact could find for the non-moving party.    *Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989).

Plaintiff did not file an opposition to Defendants' motion for summary judgment despite being given additional time to do so.    Regardless, this Court will not grant the entry of summary judgment without considering the merits of Defendants' unopposed motion.    *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.).

III.     <u>**DISCUSSION**</u>

State Defendants argue that Plaintiff did not exhaust his administrative remedies for the claims raised against them because the grievance was not timely filed.   The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").   The PLRA requires "proper exhaustion," meaning exhaustion of those administrative remedies that are "available." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Because an inmate's failure to exhaust under PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in his complaint.   *Jones v. Bock*, 549 U.S. 199 (2007); *West v. Emig*, 787 F. App'x 812, 814) (3d Cir. 2019); *see also Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013) ("Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff."). Failure to exhaust administrative remedies must be pled and proved by the defendant.   *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Exhaustion applies only when administrative remedies are "available."   *See Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850 (2016).   Administrative remedies are not available when the procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use," or "when prison administrators thwart inmates from taking advantage

of a grievance process through machination, misrepresentation, or intimidation."   *Id.* at 1859-60.
"Just as inmates must properly exhaust administrative remedies per the prison's grievance procedures, prison officials must strictly comply with their own policies."   *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019) ("[W]e hold that [the PLRA] requires strict compliance by prison officials with their own policies.").   "When an administrative process is susceptible [to] multiple reasonable interpretations, . . . the inmate should err on the side of exhaustion.'"   *Id*. (quoting *Ross*, 136 S. Ct. at 1859).

Inmate Grievance Policy No. 4.4 provides that "[g]rievances can be returned unprocessed for . . . expired filing period."   (D.I. 113-3 ¶ VI.13.)   The non-emergency grievance resolution consists of three steps.   (*See id.* ¶ VII.)   Step one provides that the grievant must submit the completed form within seven calendar days of the incident, and it provides for informal resolution. At step two the resident grievance committee/subject matter expert panel makes a recommendation to the warden who then, based on that recommendation, makes a decision, which may be appealed. Upon appeal, at step three, the bureau grievance officer makes a recommendation to the bureau chief who accepts or rejects the recommendation.   The bureau chief's decision is final.

Plaintiff's grievance was return unprocessed.   (D.I. 113-4 at 1).   The record evidence does not provide a reason why the grievance was returned unprocessed.   As correctly noted by State Defendants, however, the grievance was not timely submitted.   Because the incident occurred on November 16, 2014, the grievance should have been submitted by November 23, 2014, yet Plaintiff did not submit a grievance until December 11, 2014, some 25 days later.

As noted above, Plaintiff's disciplinary hearing was held on November 17, 2014, he was found guilty, and sanctioned to 15 days in the hole.   Plaintiff did not submit a grievance prior to his disciplinary hearing.   Even if this Court tolled the time Plaintiff spent in the hole (*i.e.*, 15 days with release on December 2, 2014), the grievance, dated December 11, 2014, was not submitted within seven days upon Plaintiff's release from the hole.   And, although Plaintiff testified that it was not always easy to get writing utensils while in the hole, there is no record evidence that Plaintiff's ability to submit a grievance was impeded in any fashion.   (D.I. 113-2 at 14).

The undisputed record evidence is that Plaintiff failed to exhaust his administrative remedies as to the claims raised against State Defendants.   Therefore, their motion for summary judgment will be granted.

## IV.   REQUEST FOR COUNSEL

Plaintiff seeks counsel on the grounds that he is indigent, has been granted *in forma pauperis* status, and cannot afford counsel; the case involves complex medical issues that may require expert testimony; he does not have in-person access to the law library; he has unsuccessfully sought retained counsel; he had no knowledge of the law or legal training; and he has been denied documents during the discovery process.   (D.I. 118).

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.   *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993).   Representation by counsel, however, may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law.   *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel.   Factors to be considered by a court in deciding whether to request

a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony.   *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.   The list is not exhaustive, nor is any one factor determinative.   *Tabron*, 6 F.3d at 157.

This Court will deny the motion without prejudice to renew for two reasons.   First, State Defendants' motion for summary judgment will be granted.   Second, the remaining medical claims are brought against Connections, and the case is stayed as to all claims raised against Connections and its employees.   At this juncture, counsel is not warranted or necessary. Plaintiff may renew his request for counsel upon lifting of the stay against Connections and its employees.

## V.   **CONCLUSION**

For the above reasons, this Court will:   (1) deny as moot State Defendants' motion for a protective order (D.I. 107); (2) grant State Defendant's motion for summary judgment (D.I. 112); and (3) deny without prejudice to renew Plaintiff's request for counsel (D.I. 118).

An appropriate order will be entered.